UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FAWAZ GHAITH,

        Plaintiff,

v.

        Case Number 09-14336-BC
        Honorable Thomas L. Ludington

DON RAUSCHENBERGER, JR., MARION
BREASBOIS, JERRY BREASBOIS, RICHARD
I. DRESSER, SCOTT GORDON, DAWN ROSE
PORTER GHAITH, BAY COUNTY, BAY
COUNTY SHERIFF'S DEPARTMENT,
MICHAEL NEWSHAM, MICHAEL E. BURCH
and JOHN E. MILLER,

        Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT DAWN ROSE PORTER GHAITH'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DISMISSING PLAINTIFF'S CONSTITUTIONAL CLAIMS AGAINST DAWN ROSE PORTER GHAITH WITH PREJUDICE**

Plaintiff Fawaz Ghaith filed a thirteen-count complaint against nine individual Defendants and two institutional Defendants on November 4, 2009, contending, inter alia, that the Defendants conspired to violate his constitutional rights to parent, to be free from unreasonable searches and seizures, and to a fair trial. The defendants include his wife at the time, Dawn Rose Porter Ghaith; her mother and stepfather, Marion and Jerry Breasbois; Bay County Assistant Prosecutors, Richard I. Dresser and Scott Gordon; Michigan State Police Officers, Don Rauschenberger, Jr., Michael Newsham, and Mark E. Burch; Bay County Sheriff John E. Miller; the Bay County Sheriff's Department; and Bay County.

On August 26, 2010, Dawn Rose Porter Ghaith ("Defendant Dawn") filed a motion for

judgment on the pleadings. Fed. R. Civ. P. 12(c). Defendant Dawn contends that Plaintiff's constitutional claims, which were filed pursuant to 42 U.S.C. §§ 1983 and 1985 are barred because Defendant Dawn is not a state actor. Defendant Dawn further contends that Plaintiff's state tort claims have substantive and procedural defects. Defendant Dawn contends that she is entitled to judgment as a matter of law on all of Plaintiff's claims. For the reasons explained below, Defendant Dawn's motion will be granted in part and Plaintiff's constitutional claims against Defendant Dawn will be dismissed because she did not act "under color" of state law. Plaintiff's state law claims against Defendant Dawn, however, present claims for relief that are "plausible" on their face, and Defendant Dawn's motion for judgment on those claims will be denied.

# I

In considering a Rule 12(c) motion, the Court assumes all "well pleaded factual allegations" are true. *Lowden v. Cnty of Clare*, 709 F. Supp. 2d 540, 545 (E.D. Mich. 2010) (citing 5C Wright & Miller, Federal Practice & Procedure § 1368). Accordingly, the factual summary below is drawn from Plaintiff's complaint.

Plaintiff and Defendant Dawn were married and remained married throughout the events relevant to this case. They have four children, Lana, Mohammed, Samer, and Hanan. Pl.'s Compl. ¶¶ 17–18. In August 2008, Defendant Dawn and their four children resided in Jordan, but Plaintiff divided his time between Jordan, where he lived with his family, and the United States, where he worked as a truck driver. *Id.* ¶¶ 22–24. Defendant Dawn wished to divorce Plaintiff and return to the United States with the couple's children to be nearer Defendant Dawn's mother and stepfather, Defendants Marion and Jerry Breasbois. *Id.* ¶¶ 25–27. However, the Ghaiths' youngest son, Samer, did not have a valid passport and was unable to leave Jordan. *Id.* Moreover, Samer's Jordanian

passport, in accordance with the country's laws, could only be renewed by Plaintiff, Samer's father, unless Plaintiff was dead or in prison. *Id.* ¶ 28.

Sometime in August 2008, Hanan, the couple's eldest daughter, traveled to the United States to live with Defendants Marion and Jerry Brisbois. *Id.* ¶¶ 29–30. According to Defendant Dawn, Hanan traveled to the United States because Hanan's uncle, Plaintiff's brother, beat her with a belt for carrying on a telephone conversation with a boy in Jordan and Plaintiff refused to intervene. When Plaintiff learned that Hanan was in the United States, he called her on the telephone at the Breasboises' residence and spoke to her several times between August 28, 2008 and September 2, 2008. *Id.* at ¶ 39. The conversations were "pleasant." *Id.* Plaintiff also accepted the Breasboises' invitation to a September 2 dinner at their residence. *Id.* ¶¶ 37–38.

Unbeknownst to Plaintiff, however, Marion Breasbois contacted the Gladwin County Sheriff on August 29, 2008, and falsely reported that Plaintiff was harassing and threatening them and their granddaughter.[1] *Id.* ¶ 40. The Breasboises also contacted the Bay County Sheriff and the Michigan State Police and falsely reported that Plaintiff was harassing and threatening them. *Id.* ¶¶ 41–42. On September 1, 2008, Plaintiff confirmed the dinner invitation for the next evening, and was told to arrive at their home at 5:00 p.m. *Id.* ¶ 44. On September 2, 2008, the day of the planned dinner, the Breasboises contacted Defendant Rauschenberger of the Michigan State Police and falsely reported that Plaintiff was coming to the Breasboises' home at 5:00 p.m. that evening to take Hanan back to Jordan. *Id.* ¶¶ 46–48. The Breasboises also told Defendant Rauschenberger that Plaintiff had threatened to kill them, Hanan, and Defendant Dawn. *Id.*

---

[1] Apparently, family members of the Breasboises, whom they visited frequently, lived in Gladwin County. The Breasboises lived in Bay County.

Defendant Rauschenberger came to the Breasboises' home at 1:00 p.m. on the afternoon of September 2, 2008 to interview the Breasboises and Hanan about the alleged threats made by Plaintiff. *Id.* ¶ 48. Defendant Rauschenberger arranged for Hanan to call Plaintiff on the telephone at 1:20 p.m. in an attempt to induce Plaintiff to repeat the threats. *Id.* ¶¶ 45, 50. Plaintiff spoke to Hanan and the Breasboises for twenty minutes, but he did not make any incriminating statements. *Id.*

Defendant Rauschenberger then informed other State Police officers and local law enforcement agencies that Plaintiff, a "very Arab looking" man, had threatened the Breasboises and suggested that Plaintiff was planning to engage in an "honor killing" of Hanan. *Id.* ¶¶ 53–54. Defendant Rauschenberger also contacted Defendant Gordon of the Bay County Prosecutor's office and Defendant Gordon instructed Rauschenberger to arrest Plaintiff. *Id.* ¶¶ 55–57.

Plaintiff arrived at the Breasboises' home with groceries to prepare dinner at 5:00 p.m. on September 2, 2008. *Id.* ¶ 58. No one was present, so Plaintiff waited in his car and called Defendant Dawn in Jordan. *Id.* ¶ 59. Defendant Dawn then contacted the Michigan State Police, and told them that Plaintiff had arrived at the Breasboises' home to follow through on his threats. *Id.* ¶¶ 60–63. Defendants Rauschenberger, Newsham, and Burch then went to the Breasboises' home, arrested Plaintiff, and searched his vehicle. *Id.* The search revealed groceries, but no weapons or other contraband. *Id.* ¶ 65–67. Plaintiff was charged with four counts of extortion, and transported to the Bay County Jail where he was held on a $500,000 bond. *Id.* ¶ 75–76.

Jordanian authorities were informed of Plaintiff's arrest and issued a new passport to Samer with his mother's permission. *Id.* ¶ 77–80. Defendant Dawn then traveled to the United States with Samer, Lana, and Mohammed, arriving on September 11, 2008. *Id.* ¶ 81.

Plaintiff was later tried on the extortion charges, but because an improper jury instruction was provided, the Honorable William J. Caprathe declared a mistrial. *Id.* ¶ 90. On the eve of second trial, the Bay County Prosecutor's Office dismissed all the charges against Plaintiff and he was released from the Bay County Jail after spending 196 days in custody. *Id.* ¶¶ 92–93. The charges were dropped because investigators were unable to confirm that the threatening phone calls allegedly made by Plaintiff actually occurred. The phone company had no record of the alleged calls.

On June 12, 2009, Plaintiff filed a complaint against the Defendants listed above in the United States District Court for the Eastern District of Michigan. [Dkt. # 1]. Pursuant to the Court's Local Rules, the case was assigned to the Honorable John Feikens in Detroit because Plaintiff now resides in Wayne County. E.D. Mich. L.R. 83.10. Defendants, however, challenged the assignment of the case to the Southern Division. Ultimately, the case was reassigned to the Court's Northern Division in Bay City on April 22, 2010, over Plaintiff's objection.

Count I of Plaintiff's complaint contends that the Defendants conspired to violate Plaintiff's constitutional right to parent by "fraudulently procuring a Jordanian passport for" Samer and "conspiring to circumvent" Jordanian law. U.S. Const. amend 14; 42 U.S.C. § 1983; *Lehr v. Robertson*, 463 U.S. 248 (1983). Counts II, III, and IV contend that the Defendants violated Plaintiff's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures, to a fair trial, and to be free from excessive bail. U.S. Const. amends. 4, 5, 6, 8, 14; 42 U.S.C. § 1983. Count V contends that Defendants conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985. Count VI contends that Defendant Bay County had a custom or policy of violating civil rights in violation of 42 U.S.C. § 1983 and *Monell*

*v. Department of Social Services*, 436 U.S. 658 (1978). Count VII contends that Defendants falsely arrested Plaintiff in violation of Michigan law. Count VIII contends that Defendants falsely imprisoned Plaintiff in violation of Michigan law. Count IX contends that Defendants maliciously prosecuted Plaintiff in violation of Michigan law. Count X contends that Defendants abused the judicial process causing harm to Plaintiff in violation of Michigan law. County XI contends Defendants engaged in "concert of action" to tortiously harm Plaintiff. County XII contends that Defendants engaged in a "civil conspiracy" to tortiously harm Plaintiff. Count XIII contends that Defendant Dresser defamed Plaintiff. Defendant Dawn is a named Defendant in each of the Counts except for Counts VI and XIII.

## II

Defendant Dawn contends that she is entitled to judgment on the pleadings as to each of Plaintiff's claims. Fed. R. Civ. P. 12(c). "A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). The requirement is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957)). If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer or for judgment on the pleadings after filing an answer. Fed. R. Civ. P. 12(b)(6) & (c). "[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same." *Lowden*, 709 F. Supp. 2d at 545 (citing *Lindsay v. Yates*, 498 F.3d 434, 437 n.4 (6th Cir. 2007)).

"While a complaint attacked by a Rule [12(c) motion for judgment on the pleadings] does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his

'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true . . . ." *Id.* at 555–56 (citations omitted). "To survive a motion [for judgment on the pleadings], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570)). "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### III

Defendant Dawn contends that she is entitled to judgment on the pleadings because (1) she is a private actor who is not subject to liability under 42 U.S.C. § 1983; (2) she cannot be held liable for false arrest, false imprisonment, malicious prosecution, or abuse of process based on her statements to police as part of a criminal investigation; (3) she is entitled to absolute immunity for the Michigan tort claims that arise from her testimony at Plaintiff's criminal trial, including Plaintiff's false arrest, false imprisonment, malicious prosecution, and abuse of process claims; and (4) the civil conspiracy and concert of action claims must be dismissed because there is no actionable underlying tort claim.

### A

Defendant Dawn first contends that Plaintiff's § 1983 and § 1985 claims against her should be dismissed because she is not a state actor and she never acted "under color" of state law. Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Thus, "[a] § 1983 claim must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (quoting *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995)). Thus, a plaintiff may not proceed under § 1983 against a private party who was not acting under color of state law " 'no matter how discriminatory or wrongful' the party's conduct." *Id.* (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).

Nevertheless, a private party involved in a conspiracy with the state or a state actor to violate an individual's constitutional rights may be liable under § 1983. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970). "Private persons, jointly engaged with state officials in the prohibited action, are acting 'under color' of law for purposes of the statute. To act 'under color' of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents." *Id.* (citation and additional quotation marks omitted).

The Sixth Circuit recognizes three tests for determining whether a private actor can be held liable for violating an individual's constitutional rights under color of state law: the public function test, the state compulsion test, and the nexus test. *Ellison*, 48 F.3d at 195.

> The public function test "requires that the private entity exercise powers which are traditionally exclusively reserved to the state . . . ." [*Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992)]. The typical examples are running elections or eminent domain. The state compulsion test requires proof that the state significantly encouraged or somehow coerced the private party, either overtly or covertly, to take

>a particular action so that the choice is really that of the state. *Id.* Finally, the nexus test requires a sufficiently close relationship (i.e., through state regulation or contract) between the state and the private actor so that the action taken may be attributed to the state. *Id.*

*Ellison*, 48 F.3d at 195. "Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.' " *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009).

Plaintiff contends that the allegation in his complaint that Defendant Dawn "acted corruptly in concert with a state official" is sufficient to state a claim for relief against her under § 1983. Plaintiff relies primarily on *United States v. Price*, 383 U.S. 787 (1966); *Adickes*, 198 U.S. 144, *Tahfs*, 316 F.3d 584, and *Revis v. Meldrum*, 489 F.3d 273 (6th Cir. 2007), to support his assertion. He does not, however, attempt to fit Defendant Dawn's conduct into one of the three categories articulated by the Sixth Circuit in *Ellison* and recently reaffirmed in *Moldowan*. 578 F.3d at 399. Some factual background concerning the cases in which the Supreme Court and the Sixth Circuit have considered the question will aid in the discussion of Plaintiff's claim.

In *Price*, eighteen men affiliated with the Ku Klux Klan were charged with conspiring to deprive three civil rights workers of their Fourteenth Amendment right to due process of law in violation of 18 U.S.C. §§ 241, 242. 383 U.S. at 789. In the middle of the night on June 21, 1964, the three civil rights workers were released from jail by the sheriff of Neshoba County, Mississippi. *Id.* at 790. As the workers drove away, they were intercepted by the eighteen men, some who were police officers and others who were not. The civil rights workers were placed in an official police vehicle, transported to an isolated area, murdered, and buried in an earthen dam. *Id.* The question before the Court was whether non-state actors could be charged with conspiring to violate an

individual's Fourteenth Amendment rights "under color" of law. The *Price* Court concluded, unanimously, that the non-state actors could be charged under the statutes because they participated in a conspiracy involving state actors, utilized state resources in furtherance on the conspiracy, and depended on state action (the release of the civil rights workers from jail) to carry out the conspiracy. *Id.* at 795, 799.

In *Adickes*, a Caucasian woman sued a retail department store after store personnel refused to serve her at a lunch counter in Hattiesburg, Mississippi because she was accompanied by several African Americans. 398 U.S. at 146–47. The plaintiff, Sandra Adickes, was arrested by Hattiesburg police officers as she left the store and charged with vagrancy. *Id.* The Supreme Court concluded that Adickes could maintain a § 1983 suit alleging violations of the Equal Protection Clause against the department store because a state-enforced custom required businesses to segregate races in public restaurants and the department store's refusal to serve Adickes was motivated by that custom. *Id.* at 173–74. The Court also stated, much more expansively, that a private person acts under color of law for the purposes of a § 1983 suit if she "is a wilful participant in a joint activity with the State or its agents." *Id.* at 152.

In *Tahfs*, the plaintiff, Judy Lynn Tahfs, alleged that the defendants, a Detroit-based news anchor and his wife, William and Miranda Proctor, conspired with employees of the Wayne County Circuit Court to violate her constitutional rights. 316 F.3d at 588–89. The Wayne County Court, at the Proctors' request, had issued a restrictive personal protection order against Tahfs in an alleged attempt to coverup an extramarital affair between Tahfs and William Proctor. *Id.* The Sixth Circuit upheld the district court's dismissal of Tahfs' complaint, concluding that Tahfs had not properly pled that the Proctors acted "under color" of state law. *Id.* at 591–93. In reaching its conclusion, the

Sixth Circuit applied the three-part *Ellison* test and concluded that the Proctors did not qualify as state actors under any of the tests. *Id.* "[C]onclusory allegations about corrupt joint action" between state officials and private actors "do no meet even the low threshold necessary to survive a motion to dismiss." *Id.* at 593. The Court also noted, however, that "a plaintiff's complaint that a private citizen-defendant acted corruptly in concert with a state official *may* be sufficient to make out a claim that, as to the action in question, the defendant is a state actor." *Id.* at 591 (emphasis added).

Finally, in *Revis*, a judgment debtor, Nathaniel Revis, sued a sheriff's deputy; the judgment creditor, Laschinski Emerson; four members of the legal team that represented Emerson in the underlying case; and other state actors; alleging that Revis's constitutional rights were violated when he was evicted from his home in an attempt to enforce the judgment. 489 F.3d at 277. The Sixth Circuit affirmed the district court's dismissal of Revis's § 1983 and § 1985 claims against the private actors, emphasizing that their conduct did not fit within any of the three *Ellison* tests. *Id.* at 289–92. The court further noted that a private party is not liable under § 1983 for a constitutional violation unless that party's conduct may be "fairly attributed to the state." *Id.* "[S]imply invoking or following unchallenged state procedures, even if done in bad faith, does not render the private-party defendants state actors . . . ." *Id.* at 292; *see also Luger v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).

In this case, Plaintiff correctly emphasizes that a "corrupt conspiracy" whereby state and private actors work in concert to utilize valid state procedures for a wrongful purpose *may* expose the private individuals to § 1983 liability. *See Tahfs*, 316 F.3d at 591; *see also Price*, 383 U.S. at 795, 799. *But see Hill v. Langer*, 86 F. App'x 163, 167 (6th Cir. 2004) (concluding that a joint action involving state authorities and private parties converts the private parties into state actors for

the purposes of § 1983 only in the context of a prejudgment writ of execution). But those circumstances are limited. The private actor must have exercised a function traditionally reserved to the state, acted under compulsion of a state policy or custom, or functioned as part of a "symbiotic relationship" with the state. *Ellison*, 48 F.3d at 195. The third circumstance, that based on a symbiotic relationship or nexus with the state, is the only one that even arguably applies in this case. Notably, however, Plaintiff has not cited a single case where such a symbiotic relationship or nexus is sufficient to hold a private party liable under § 1983. *See generally*, *Revis*, 489 F.3d at 289 ("[A]midst such variety [of tests], examples may be the best teachers." (quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletics Ass'n*, 531 U.S. 288, 297 (2001))).

Rather, Plaintiff relies on the conclusory allegation in his complaint that Defendant Dawn formed a "corrupt conspiracy" with state police officers, the county sheriff, and county prosecutors to violate Plaintiff's constitutional rights. Indeed, the only factual allegation concerning Defendant Dawn's participation in the conspiracy is that she falsely reported to law enforcement authorities that Plaintiff harassed and threatened her and her family.[2] "Providing information to police, responding to questions about a crime, and offering testimony at a criminal trial does not expose a private individual to liability for actions taken under color of law" even if the information provided is false and offered in bad faith. *Moldowan*, 578 F.3d at 399. To prevail, Plaintiff must also provide evidence of a "sufficiently close relationship" between Defendant Dawn and the state actors such

---

[2] At the hearing, Defendant Dawn's counsel contended that Defendant Dawn never directly reported to police officers that she or her family were threatened. Rather, she reported to police officers that her daughter had received threats toward the family from her husband, and that her husband was now at her mother's house. The apparent distinction is not material to Defendant Dawn's motion for judgment on the pleadings. The key allegations in the complaint are that Defendant Dawn knew the alleged threats never occurred, and still participated in a scheme to have her husband arrested and prosecuted as a result of the alleged threats.

that Defendant Dawn's conduct can be "fairly attributed" to the state. *Ellison*, 48 F.3d at 195.

Plaintiff's factual allegations concerning Defendant Dawn's alleged participation in the "corrupt conspiracy" are insufficient to demonstrate that such a relationship was "plausible on its face." *Iqbal*, 129 S. Ct. at 1949. Indeed, Defendant Dawn's only direct contact with Michigan authorities was, apparently, her phone call from Jordan on the day of Plaintiff's arrest indicating that Plaintiff was at Defendant Dawn's mother's home. Pl.'s Compl. ¶ 60. Accordingly, Plaintiff's constitutional claims against Defendant Dawn will be dismissed.[3]

**B**

Defendant Dawn next contends that she cannot be liable for false arrest or false imprisonment under Michigan law because she did not "instigate" or "participate" in the arrest or imprisonment. By contrast, Plaintiff contends that Defendant Dawn deliberately provided false information to police and prosecutors for the purpose of securing Plaintiff's arrest and imprisonment, and that Defendant Dawn took these actions maliciously and for an unlawful purpose. According to Plaintiff, the facts alleged in the complaint are sufficient to state a claim for relief under Michigan law.

As an initial matter, Plaintiff admits in his response that he does not specifically allege in his complaint that Defendant Dawn reported false information to police officers, prosecutors, or other state authorities. Pl.'s Compl. ¶¶ 59–60. Nevertheless, the inaccuracy of the information provided

---

[3] Notably, Plaintiff's constitutional claims provide the only predicate for original jurisdiction in this Court. 28 U.S.C. § 1331. The Court will, however, consider the merits of Plaintiff's state tort claims pursuant to its supplemental jurisdiction. 28 U.S.C. § 1367(a). If, however, all of Plaintiff's constitutional claims against other Defendants were to be dismissed before trial, the Court is unlikely exercise its discretion to retain jurisdiction over the state tort claims. 28 U.S.C. § 1367(c)(3).

to authorities by Defendant Dawn, Marion Breasbois, and Hanan, as well as the lack of a factual basis for the criminal charges brought against Plaintiff, are central themes of his complaint. Ultimately, Plaintiff's constitutional and state law claims are predicated on his contention that Defendants manufactured a criminal case against him based on threats and harassment that did not occur. Accordingly, the use of the word "false" in the same paragraph as the specific allegations in the complaint was unnecessary. Plaintiff has adequately alleged that Defendant Dawn participated in a conspiracy to provide knowingly false reports of a crime to police officers in order to secure Plaintiff's arrest and detention for a malicious purpose.

With that in mind, Defendant first contends that giving information to the police that leads to a later arrest does not subject a private actor to liability for false arrest or false imprisonment even if the information was knowingly false. To be liable for false arrest or false imprisonment, the private actor must "instigate" or "participate" in the arrest. *Lewis v. Farmer Jack Div., Inc.*, 327 N.W.2d 893, 894 (Mich. 1982). Plaintiff responds that when Defendant Dawn participated in a scheme to provide false information to the police that Plaintiff had threatened or harassed Hanan, Dawn, and the Breasboises, Defendant Dawn "instigated" a false arrest. Although Plaintiff's complaint alleges that Defendant Dawn's only direct contact with police was her telephone call from Jordan, indicating that Plaintiff was at the Breasboises' home, the complaint further alleges that she made the call in furtherance of an alleged conspiracy with her daughter, mother, and stepfather to secure Plaintiff's arrest and imprisonment.

"A false arrest is a legal or unjustified arrest."[4] *Id.* To prevail, a plaintiff must demonstrate

---

[4] Michigan distinguishes between false arrest and false imprisonment. *Moore v City of Detroit*, 652 N.W.2d 688 (Mich. Ct. App. 2002). False imprisonment requires no more than an unlawful restraint on liberty, while false arrest requires an unlawful arrest. Any time a person is

-14-

that the defendant committed an act with the intention of arresting or imprisoning the plaintiff, the act directly or indirectly resulted in the plaintiff's arrest or imprisonment, and the plaintiff was conscious of the arrest or imprisonment. *Moore*, 652 N.W.2d at 691 (quoting *Adams v. Nat'l Bank of Detroit*, 508 N.W.2d 464, 468 (Mich. 1993)). Thus, a police officer who makes an arrest without probable cause or a valid warrant may be liable for false arrest. More importantly for the purposes of the present motion, a private citizen who "instigates" or "participates" in the illegal arrest may also be liable. *Id.* (citing Restatement Second of Torts § 45A). The question here is whether a person who falsely accuses another of a crime, intending that person's arrest and imprisonment to result, has instigated an arrest.

Defendant Dawn, relying on *Lewis* emphasizes that "[i]t is not enough for instigation that the actor has given information to the police about the commission of a crime, or has accused the other of committing it so long as he leaves to the police the decision as to what shall be done about the arrest, without persuading or influencing them." *Id.* at 219 n.3 (quoting Restatement Second of Torts § 45A); *see also Moldowan*, 578 F.3d 398–400. She does not explain, however, why a person who deliberately withholds information from police and participates in a scheme to provide false information should be insulated from liability. Indeed, such a person has done more than provide information to police, she has persuaded or influenced an arrest.

In *Lewis*, for example, the Michigan Supreme Court concluded that a complaining witness could not be liable for merely providing information to police. 327 N.W.2d at 218–19. But the court specifically declined to decide if deliberately withholding information from police would alter

---

falsely arrested, that person is also falsely imprisoned. A person may, however, be falsely imprisoned without being falsely arrested. The distinction is not material to the present analysis and the claims will be considered together.

the conclusion. *Id.* at 219. Moreover, to prevail on a false arrest claim, Plaintiff need not prove that Defendant Dawn actually arrested or physically detained Plaintiff, but only that she committed an overt act with the intention that Plaintiff's arrest or imprisonment would result, and that Plaintiff's arrest or imprisonment did in fact result, directly or indirectly, from that conduct. A jury could reasonably conclude that Defendant Dawn is liable for false arrest or imprisonment based on her participation in a conspiracy to falsely accuse Plaintiff of a crime and her telephone call to Michigan police from Jordan disclosing Plaintiff's location. *See* Restatement Second of Torts § 45A, cmt. c (noting that a person who provides information to police is not liable for false arrest unless that person has "invited or encouraged an improper" arrest).

### C

Defendant Dawn next contends that Plaintiff's complaint does not state a cause of action against her for malicious prosecution. To prevail on his malicious prosecution claim against Defendant Dawn, Plaintiff must demonstrate that Defendant Dawn "initiated or continued" a criminal proceeding against Plaintiff; that the proceeding terminated in favor of Plaintiff; that the proceeding was initiated or continued without probable cause; and malice, or a "primary purpose other than that of bringing the offender to justice." *Wilson v. Yano*, 237 N.W.2d 494, 496 (Mich. Ct. App. 1975) (citations omitted).

Defendant Dawn asserts that she cannot be liable for malicious prosecution because independent investigations and discretionary choices made by the police and prosecutors at each step of the process insulate her from liability. Specifically, Defendant Dawn contends that the decision to "initiate or continue" a criminal prosecution is that of the public prosecutor alone, and that a private person cannot be liable for malicious prosecution where the prosecutor initiates the

prosecution after an independent investigation. *Moldowan*, 578 F.3d at 399–400 (citing *Matthews v. Blue Cross & Blue Shield of Mich.*, 572 N.W.2d 603, 610 (Mich. 1998)). Indeed, if Defendant Dawn's reading of *Matthews* is correct, the tort of malicious prosecution no longer exists in Michigan because state prosecutors—the only individuals in Michigan who are capable of initiating a criminal prosecution—are absolutely immune from suit for initiating a criminal prosecution. *Id.*

The better reading of *Matthews* is advanced by Plaintiff, and supported by the Restatement Second of Torts and other scholars. *See* Torts: Michigan Law and Practice (Linda Miller Atkinson et al. eds., 2d ed. 2000 and Supp. 2009) §§ 3.41–3.44. In *Matthews*, the Michigan Supreme Court significantly limited private individuals' potential exposure to liability for malicious prosecution, concluding that a prosecutor's exercise of independent discretion in initiating and maintaining a prosecution is a complete defense to an action for malicious prosecution. 572 N.W. 2d at 613. The state supreme court further emphasized, however, that if a person furnishes information to a prosecutor that the person knows to be false, and the prosecutor acts on that information to initiate the prosecution, the person can still be liable for malicious prosecution. *Id.* The concept is explained in the Restatement, which was quoted at length in the *Matthews* decision:

> A private person who gives to a public official information of another's supposed criminal misconduct, of which the official is ignorant, obviously causes the institution of such subsequent proceedings as the official may begin on his own initiative, but giving the information or even making an accusation of criminal misconduct does not constitute a procurement of the proceedings initiated by the officer if it is left entirely to his discretion to initiate the proceedings or not. When a private person gives to a prosecuting officer information that he believes to be true, and the officer in the exercise of his uncontrolled discretion initiates criminal proceedings based upon that information, the informer is not liable under the rule stated in this Section even though the information proves to be false and his belief was one that a reasonable man would not entertain. The exercise of the officer's discretion makes the initiation of the prosecution his own and protects from liability the person whose information or accusation has led the officer to initiate the proceedings.

> If, however, the information is known by the giver to be false, an intelligent exercise of the officer's discretion becomes impossible, and a prosecution based upon it is procured by the person giving the false information. In order to charge a private person with responsibility for the initiation of proceedings by a public official, it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Restatement Second of Tort § 653, cmt. g.

Here, Plaintiff contends that Defendant Dawn participated in a conspiracy to provide false information to state authorities with the intention that state authorities would act on that information by arresting, and prosecuting, Plaintiff. After receiving that information, state authorities did arrest and prosecute Plaintiff, and continued the prosecution until their own independent investigation revealed no corroborating evidence, at which point the charges were dismissed. Moreover, the prosecution was allegedly initiated by Defendant Dawn not to bring Plaintiff to justice, but to incarcerate him so that his youngest son could travel from Jordan to the United States without his permission. Plaintiff's complaint properly states a claim for malicious prosecution against Defendant Dawn.

**D**

Defendant Dawn next contends that Plaintiff's abuse of process claim should be dismissed because the complaint does not allege that she wrongfully used any process after it was issued. An "action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Spear v. Pendill*, 130 N.W. 343, 344 (Mich. 1911) (citations omitted). To prevail on this claim, Plaintiff must demonstrate that Defendant Dawn had an ulterior motive or purpose for the use of process, and that she used the process for something other than the regular prosecution of a legal claim. *Id.*, *Friedman v. Dozorc*, 312 N.W.2d 585 (Mich. 1981).

As Defendant emphasizes, providing information to state authorities that leads to a criminal prosecution is not an abuse of process. Using the indictment or other legal process issued in that criminal case, however, to facilitate the transportation of Plaintiff's son from Jordan to the United States without Plaintiff's permission and in violation of Jordanian law may well be an abuse of process. Plaintiff has properly pled an ulterior purpose, and an improper use of process in furtherance of that purpose.

**E**

Defendant Dawn's final contention in her motion for judgment on the pleadings is that Plaintiff's claims for concert of action and civil conspiracy must be dismissed because the causes of action require an actionable underlying tort claim. *See Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003) (civil conspiracy) (citation omitted); *Holliday v. McKeiver*, 401 N.W.2d 278, 279–80 (Mich. Ct. App. 1986) (concert of action). Plaintiff's claim states actionable underlying tort claims for false arrest, false imprisonment, malicious prosecution, and abuse of process. Accordingly, the Plaintiff's claims for concert of action and civil conspiracy are properly pled.

**IV**

Because Plaintiff has not alleged sufficient facts to raise a plausible claim that Defendant Dawn acted "under color" of state law, the constitutional claims asserted against Defendant Dawn in Counts I, II, III, IV, and V will be dismissed with prejudice. The Court will, however, retain jurisdiction over Plaintiff's state law claims against Defendant Dawn pursuant to 28 U.S.C. § 1367(a), including Counts VII, VIII, IX, X, XI, and XII.

Accordingly, it is **ORDERED** that Defendant Dawn Rose Porter Ghaith's motion for

judgment on the pleadings [Dkt. 40] is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that Plaintiff's constitutional claims, including Counts I, II, III, IV, and V, against Defendant Dawn Rose Porter Ghaith are **DISMISSED WITH PREJUDICE**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 2, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 2, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS