UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FAWAZ GHAITH,

        Plaintiff,

                                        Case Number 09-14336-BC

v.                                    Honorable Thomas L. Ludington

DON RAUSCHENBERGER, JR., MARION
BREASBOIS, JERRY BREASBOIS, RICHARD
I. DRESSER, SCOTT GORDON, DAWN ROSE
PORTER GHAITH, BAY COUNTY, BAY
COUNTY SHERIFF'S DEPARTMENT,
MICHAEL NEWSHAM, MICHAEL E. BURCH
and JOHN E. MILLER,

        Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DISMISSING WITH PREJUDICE PLAINTIFF'S § 1983 CLAIMS AGAINST THE STATE AND COUNTY DEFENDANTS, AND DIRECTING ADDITIONAL BRIEFING ON WHETHER THE COURT SHOULD RETAIN JURISDICTION OVER THE REMAINING CLAIMS

Plaintiff Fawaz Ghaith believes that he was mistreated by his former wife, Defendant Dawn Rose Porter Ghaith, his mother- and father-in-law, Marion and Jerry Breasbois, and his daughter, Hanan Ghaith. He has highlighted some circumstantial evidence that would appear to corroborate his belief that his family schemed and lied to have him jailed and prosecuted for a crime he did not commit. While he was in jail awaiting trial—unable to raise a $500,000 bond—his wife, without consulting Plaintiff, brought their children from their home in Jordan to the United States and began a divorce proceeding in Midland County. After six months in custody, the prosecutors dropped the charges against him when they were unable to confirm his family's story.

As compelling as Plaintiff's case against his family may be, however, federal law does not

provide a remedy against them.  *See Ghaith v. Rauschenberger*, No. 09-14336, 2010 WL 4982795 (E.D. Mich. Dec. 2, 2010).  The United States Constitution protects the rights and liberties of individuals against encroachment by governments, not other individual citizens.  Section 1983, which was enacted as part of the Civil Rights Act of 1871 "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails," provides a private right of action against persons acting "under color" of state law.  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citing *Carey v. Piphus*, 435 U.S. 247, 254–57 (1978)).  It does not and cannot constitutionally govern private citizens acting on their own private agenda.

Plaintiff has not advanced any evidence that the state and municipal employees identified in his complaint acted in concert with his family or even had any reason to believe the information reported by his family was false.  As a result, they cannot be held liable under § 1983 either.  This is not to say Plaintiff is without a remedy.  Indeed, if his wife and daughter falsely reported to authorities that he had committed a crime, they likely committed a crime themselves.  *See* Mich. Comp. Laws § 411a(1)(b) (making the false report of a felony a felony under Michigan law, punishable by up to four years in prison and a $2,000 fine).  Additionally, they may be liable to Plaintiff under Michigan tort law, as discussed in this court's earlier opinion.  *See Ghaith*, No. 09-14336, 2010 WL 4982795.  However, where there is no evidence that state or county officials were involved in any of the alleged misconduct, or even knew of it, Plaintiff has not presented a claim for which there is a remedy under federal law or a forum in federal court.  Plaintiff's constitutional claims must be dismissed.  If he wishes, Plaintiff may pursue redress of his grievances under state law.

**I**

Plaintiff's thirteen-count complaint identifies nine individual Defendants and two institutional Defendants. He contends, inter alia, that the Defendants conspired to violate his constitutional rights to parent, to be free from unreasonable searches and seizures, and to a fair trial. The defendants include his wife, Dawn Rose Porter Ghaith; her mother and stepfather, Marion and Jerry Breasbois; Bay County Assistant Prosecutors, Richard I. Dresser and Scott Gordon; Michigan State Police Officers, Don Rauschenberger, Jr., Michael Newsham, and Mark E. Burch; Bay County Sheriff John E. Miller; the Bay County Sheriff's Department; and Bay County.

On August 26, 2010, Dawn Rose Porter Ghaith ("Defendant Dawn") filed a motion for judgment on the pleadings. Fed. R. Civ. P. 12(c). After a hearing on November 30, 2010, the Court issued an opinion and order granting in part and denying in part Defendant Dawn's motion on December 2, 2010 [Dkt. # 56]. The Court concluded that Plaintiff's § 1983 claims against his former wife should be dismissed because Defendant Dawn is not a state actor. Plaintiff's tort claims against Defendant Dawn, however, stated a claim for relief and judgment on the pleadings was denied with respect to his claims against her under Michigan law. In permitting Plaintiff's state-law claims to proceed, the Court cautioned the parties that it would be unlikely to retain jurisdiction over the remaining claims against Defendant Dawn if all of the constitutional claims against the other Defendants were also dismissed. 28 U.S.C. § 1367(c)(3).

While Defendant Dawn's motion for judgment on the pleadings was under consideration, the remaining Defendants also filed motions for summary judgment or judgment on the pleadings [Dkt. # 48 & 53]. The Bay County Defendants, including Dresser, Gordon, Miller, the Sheriff's Department, and the County, filed a motion for summary judgment or judgment on the pleadings

-3-

on November 22, 2010.  The Bay County Defendants contend that they are entitled to absolute or qualified immunity as to all of Plaintiff's claims.  The Bay County Defendants further contend that Plaintiff has not identified sufficient evidence to defeat their entitlement to qualified immunity or absolute immunity.  The State Defendants, including Burch, Newsham, and Rauschenberger, also filed a motion for summary judgment.  The State Defendants similarly contend that they are entitled to qualified immunity and that Plaintiff's claims lack factual support.

# I

The motions present the Court with two different standards of review.  The Bay County Defendants cite both the Rule 12(c) judgment on the pleadings standard and the Rule 56(a) summary judgment standard, while the State Defendants rely exclusively on Rule 56(a).  In considering a Rule 12(c) motion, the Court assumes all "well pleaded factual allegations" are true and will not look beyond the pleadings in reaching a conclusion.  *Lowden v. Cnty of Clare*, 709 F. Supp. 2d 540, 545 (E.D. Mich. 2010) (citing 5C Wright & Miller, Federal Practice & Procedure § 1368); *see also* Fed. R. Civ. P. 12(d) (directing the Court not to consider matters outside the pleadings).  In considering a Rule 56(a) motion, by contrast, the Court may review the entire record in the case and will consider affidavits, deposition transcripts, and other documents in reaching a conclusion.  Fed. R. Civ. P. 56(c).  Under Rule 56(a), the Court is obligated to construe facts in the Plaintiff's favor only if there is a genuine dispute as to what occurred, and there is no obligation to assume the well pleaded allegations in Plaintiff's complaint are true.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).  With that in mind, the facts as alleged in Plaintiff's complaint are summarized below, but the Court will consider other relevant evidence in the appropriate circumstances.

## II

Plaintiff and Defendant Dawn were married and had four children, Lana, Mohammed, Samer, and Hanan. Pl.'s Compl. ¶¶ 17–18. In August 2008, Defendant Dawn and the four children resided in Jordan, but Plaintiff divided his time between Jordan, where he lived with his family, and the United States, where he worked as a truck driver. *Id.* ¶¶ 22–24. Defendant Dawn wished to divorce Plaintiff and return to the United States with the couple's children to be nearer Defendant Dawn's mother and step-father, Defendants Marion and Jerry Breasbois. *Id.* ¶¶ 25–27. But the couple's youngest son, Samer, did not have a passport, and was unable to leave the country. *Id.* Samer's Jordanian passport, in accordance with the country's laws, could only be renewed by Plaintiff, his father, unless Plaintiff was dead or in prison. *Id.* ¶ 28; *see also* [Dkt. # 74-m].

Sometime in August 2008, Hanan, the couple's eldest daughter, traveled to the United States to live with Defendants Marion and Jerry Breasbois. Pl.'s Compl. ¶¶ 29–30. According to Defendant Dawn, Hanan traveled to the United States because Hanan's uncle, Plaintiff's brother, beat her for carrying on a relationship with a boy in Jordan and Plaintiff refused to intervene. When Plaintiff learned Hanan was in the United States, he called her on the telephone at the Breasboises' residence and spoke to her several times between August 28, 2008 and September 2, 2008. *Id.* ¶ 39; *see also* [Dkt. 63-E]. The conversations were "pleasant." Pl.'s Compl. ¶ 49. Plaintiff also accepted the Breasboises' invitation to a September 2 dinner at their residence. *Id.* ¶¶ 37–38.

Unbeknownst to Plaintiff, the Breasboises contacted the Gladwin County Sheriff on August 29, 2008, and reported that Plaintiff was harassing and threatening them and their granddaughter. *Id.* ¶ 40. The Breasboises also contacted the Michigan State Police and reported that Plaintiff was harassing and threatening them. *Id.* ¶¶ 41–42. Plaintiff contends those reports were false, and part

of a scheme to have him arrested and prosecuted.  On September 1, 2008, Plaintiff confirmed the dinner invitation for the next evening, and was told to arrive at their home at 5:00 p.m. *Id.* ¶ 44.  On September 2, 2008, the day of the planned dinner, the Breasboises contacted Defendant Rauschenberger of the Michigan State Police and reported that Plaintiff was coming to the Breasboises' home at 5:00 p.m. that evening to take Hanan back to Jordan.  *Id.* ¶¶ 46–48.  The Breasboises also told Defendant Rauschenberger that Plaintiff had threatened to kill them.  *Id.*

Defendant Rauschenberger came to the Breasboises' home at 1:00 p.m. on the afternoon of September 2, 2008 to interview the Breasboises and Hanan about the alleged threats made by Plaintiff.  *Id.* ¶ 48; [Dkt. # 61-D].  In his complaint, Plaintiff theorized that Defendant Rauschenberger arranged for Hanan to call Plaintiff on the telephone at 1:20 p.m. in an attempt to get Plaintiff to repeat the threats, and that Plaintiff spoke with Hanan and the Breasboises for twenty minutes and did not make any incriminating statements.  Pl.'s Compl. ¶¶ 45, 50.  Indeed, the Breasboises' phone records confirm that Plaintiff placed a called to the Breasboises' home at 1:25 p.m. Eastern Time, while Rauschenberger was apparently at the home.  [Dkt. # 63-E].  The call lasted twenty-one minutes, but it is not mentioned in Rauschenberger's police report.  [Dkt. # 63-D].  Rauschenberger noted that the Breasboises received a call from Dawn Ghaith while he was in the home and that he attempted to have Hanan call Plaintiff later in the day from the police station, but the 1:25 p.m. call was not mentioned.

Defendant Rauschenberger then transported Hanan and Marion Breasbois to a Bay City women's shelter.  Defendant Rauschenberger also contacted Defendant Gordon of the Bay County Prosecutor's office.  Defendant Gordon advised Rauschenberger that if Marion Breasbois and Hanan had reported that Plaintiff threatened to kill his daughter or another member of his daughter's family

in an effort to force her to return to Jordan, there was probable cause to believe he had committed extortion in violation of Michigan law. *Id.* ¶¶ 55–57. Accompanied by two other State Police officers, Defendants Newsham and Burch, Rauschenberger returned to the Breasboises' home to find and arrest Plaintiff. *Id.* ¶¶ 53–54.

Plaintiff arrived at the Breasboises' home with groceries to prepare dinner at 5:00 p.m. on September 2, 2008. *Id.* ¶ 58. No one was there so Plaintiff waited in his car and called Defendant Dawn in Jordan. *Id.* ¶ 59. The phone records also show that Plaintiff attempted to call the Breasboises home, twice, shortly after 6:00 p.m., but that the calls were not answered. [Dkt. # 63-E]. Defendants Rauschenberger, Newsham, and Burch arrived at the Breasboises' home sometime after 6:00 p.m. and found him sitting in a rented car in the driveway. The officers approached the car, arrested Plaintiff, and searched his vehicle. *Id.* ¶¶ 60–63. The search revealed groceries but no weapons or other contraband. *Id.* ¶ 65–67. Defendant was charged with four counts of extortion, and transported to the Bay County Jail where he was held on a $500,000 bond. *Id.* ¶ 75–76.

Jordanian authorities were informed of Plaintiff's arrest and issued a new passport to Samer. *Id.* ¶ 77–80. It is unclear from the record the extent to which Plaintiff's arrest aided or accelerated Samer's passport application process. Defendant Rauschenberger did provide a copy of his police report to the U.S. Embassy in Aman, Jordan, with Defendant Dresser's permission. [Dkt. 63-D]. Defendant Dawn then traveled to the United States with Samer, Lana, and Mohammed, arriving on September 11, 2008. *Id.* ¶ 81.

Plaintiff was tried on the extortion charges, but the jury was unable to reach a verdict and a mistrial resulted. *Id.* ¶ 90. On the eve of second trial, the Bay County Prosecutor's Office dismissed all of the charges against Plaintiff and he was released from the Bay County Jail after

spending 196 days in custody.  *Id.* ¶¶ 92–93.  The charges were dropped when investigators were unable to confirm that the threatening phone calls allegedly made by Plaintiff actually occurred. Although the phone records confirm that Plaintiff made several calls to the Breasboises' home, the times of those calls apparently did not match the times reported by Marion Breasbois and Hanan.


On June 12, 2009, Plaintiff filed a complaint against the Defendants in the United States District Court for the Eastern District of Michigan in Detroit.  [Dkt. # 1].  Count I of Plaintiff's complaint contends that the Defendants conspired to violate Plaintiff's constitutional right to parent by "fraudulently procuring a Jordanian passport for" Samer and "conspiring to circumvent" Jordanian law.  U.S. Const. amend 14; 42 U.S.C. § 1983; *Lehr v. Robertson*, 463 U.S. 248 (1983). Counts II, III, and IV contend that the Defendants violated Plaintiff's Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights to be free from unreasonable searches and seizures, to a fair trial, and to be free from excessive bail.  U.S. Const. amends. 4, 5, 6, 8, 14; 42 U.S.C. § 1983.  Count V contends that Defendants conspired to interfere with Plaintiff's civil rights in violation of 42 U.S.C. § 1985.  Count VI contends that Defendant Bay County had a custom or policy of violating civil rights in violation of 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978).  Count VII contends that Defendants falsely arrested Plaintiff in violation of Michigan law. Count VIII contends that Defendants falsely imprisoned Plaintiff in violation of Michigan law. Count IX contends that Defendants maliciously prosecuted Plaintiff in violation of Michigan law. Count X contends that Defendants abused the judicial process causing harm to Plaintiff in violation of Michigan law.  Count XI contends Defendants engaged in "concert of action" to tortiously harm Plaintiff.  County XII contends that Defendants engaged in a "civil conspiracy" to tortiously harm

Plaintiff.  Count XIII contends that Defendant Dresser defamed Plaintiff.

### III

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).  The requirement is meant to provide the opposing party with " 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 42, 47 (1957)).  If a complaint does not meet that standard, the opposing party may move to dismiss it for failure to state a claim at any time before filing an answer or for judgment on the pleadings after filing an answer.  Fed. R. Civ. P. 12(b)(6) & (c).  "[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same." *Lowden*, 709 F. Supp. 2d at 545 (citing *Lindsay v. Yates*, 498 F.3d 434, 437 n.4 (6th Cir. 2007)).

"While a complaint attacked by a Rule [12(c) motion for judgment on the pleadings] does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (2007) (citations omitted). "Factual allegations must be enough to raise a right to relief above a speculative level, on the assumption that all the allegations in the complaint are true . . . ." *Id.* at 555–56 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570)).  "Facial plausibility" requires the plaintiff to include sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

-9-

A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party has the initial burden of informing the Court of the basis for its motion, and identifying where to look in the record for relevant facts "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the opposing party who must "set out specific facts showing a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted).  If the opposing party does not raise genuine issues of fact and the record indicates the moving party is entitled to judgment as a matter of law, the court shall grant summary judgment. *Anderson*, 477 U.S. at 250.

The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.  The party opposing the motion may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477 U.S. at 252.

**IV**

As an initial matter, Plaintiff contends that Defendants' motions for summary judgment are premature because he has not had an opportunity to engage in "meaningful discovery."  A brief

review of the docket, however, demonstrates that while Plaintiff may not have engaged in discovery, he has been provided the opportunity to do so. This case was filed on November 4, 2009, and the motions currently pending were filed more than one year later, on November 22 and November 24, 2010. Although the parties invested several months on a skirmish concerning the appropriate place of holding court, five months passed between the time this Court entered the scheduling order on June 14, 2010 [Dkt. # 39] and the time that the first motion for summary judgment was filed on November 22, 2010 [Dkt. # 48] and discovery closed on December 30, 2010. During that time, Plaintiff served written interrogatories and requests for production of documents, but he did not conduct any depositions. [Dkt. # 66]. Moreover, although Defendants apparently did not produce all of the requested documents because of concerns about a protective order, Defendants answered the interrogatories. Plaintiff made no effort to compel production of the documents.

In an affidavit filed pursuant to Federal Rule of Civil Procedure 56(d),[1] Plaintiff asserts he "cannot present facts essential to justify [his] opposition" to Defendants' motion for summary judgment because he has not had an opportunity to depose any of the witnesses. [Dkt. # 63-B]. He does not, however, identify any evidence he seeks to discover. *See Singleton v. United States*, 277 F.3d 864, 872 (6th Cir. 2002) ("[A] district court need not allow additional discovery by the nonmoving party if the party does not explain how such discovery would rebut the movant's showing of the absence of a genuine issue of material fact.") (citations omitted). The police reports, phone records, and transcripts from the preliminary hearing, criminal trial, and divorce proceeding are all available. Plaintiff has not identified anything he believes he might learn from the proposed depositions that is not already part of the record. Therefore, it is appropriate to decide the motions

---

[1] Formerly Rule 56(f).

on the merits, particularly where the principal issues are qualified immunity and state governmental immunity. If the Defendants are immune from suit, they should not be required to comply with the burdens of discovery [Dkt. # 67]. *See Pearson v. Callahan*, 555 U.S. 223, 815 (emphasizing the importance of determining whether defendants in a § 1983 case are entitled to qualified immunity early in the case, before discovery).

Given the relatively large number of Defendants and claims, it is also worth providing a brief note on organization. Although there are discrete questions raised by the separate Defendants in their motions and Plaintiff's responses, the issues can be categorized for organizational purposes. The first, and most significant issue, is whether the individual Defendants are entitled to qualified immunity or absolute immunity as to Plaintiff's constitutional claims. The second issue is whether Plaintiff is estopped from challenging the determination of a Michigan state court that probable cause existed for his arrest and prosecution. The third issues is whether the only remaining institutional Defendant,[2] Bay County, is entitled to summary judgment under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). The final issue is whether Plaintiff's state tort claims should be dismissed based on state law immunity issues or on their merits. Each of the categories will be addressed in turn.

### A.

"Qualified immunity provides 'that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

---

[2] The parties agree that the Bay County Sheriff's Department is "not a legal entity capable of being sued." As a result, Plaintiff's claims against the Bay County Sheriff's Department will be dismissed.

known.' " *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation." *Saucier v. Katz*, 533 U.S. 194, 200 (2001) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  Qualified immunity is immunity from suit, not merely a defense to liability.  *See id.* at 200–01 (emphasis in original).  Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity. *Ciminillo v. Streicher*, 434 F.3d 461, 466 (6th Cir. 2001) (citation omitted).

Generally, summary judgment based on qualified immunity is proper if the law did not put the actor on notice that her conduct would be clearly unlawful. *Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002).  However, if genuine issues of material fact exist as to whether the actor committed acts that would violate a clearly established right, then summary judgment is improper. *Poe v. Haydon*, 853 F.2d 418, 425–26 (6th Cir. 1988).

At the summary judgment phase, whether a defendant is entitled to qualified immunity depends on a two-step inquiry: first, whether the violation of a constitutional right has occurred, and second, whether the right at issue "was clearly established at the time of defendant's alleged misconduct." *Grawey v. Drury*, 567 F.3d 302, 309 (6th Cir. 2009) (citations and quotation marks omitted); *see also Pearson v. Callahan*, 555 U.S. 223, (2009) ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

The Court will first address whether the State Defendants, Michigan State Police Officers Rauschenberger, Newsham, and Burch, are entitled to qualified immunity.  The Court will then

-13-

address whether the County Defendants, Prosecutors Dresser and Gordon and Sheriff Miller, are entitled to qualified immunity.

## 1.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures . . . ." U.S. Const. amend IV. Thus, an arrest may be made without a warrant, but only if the arresting officer has probable cause to believe the suspect has violated or is violating the law. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988); *see also Ingram v. City of Columbus*, 185 F.3d 579, 592–93 (6th Cir. 1999) ("It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment."). An officer has probable cause to make an arrest if there are "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). Whether probable cause exists to make an arrest depends on the facts then known to the officer, "rather than with the 20/20 vision of hindsight." *Klein v. Long*, 275 F.3d 544, 550 (6th Cir. 2001).

The Supreme Court has emphasized that the question of whether there is probable cause to make an arrest is an objective one, and the officer's subjective intentions or motivations do "not invalidate the [arrest] as long as the circumstances, viewed objectively, justify that action." *Scott v. United States*, 436 U.S. 128, 137–38 (1978); *see also Criss*, 867 F.2d at 262 ("If the circumstances, viewed objectively, support a finding of probable cause, the arresting officer's actual motives are irrelevant."). Once an officer establishes probable cause, he is under no obligation to

-14-

continue investigating and may immediately arrest the suspect. *Klein*, 275 F.3d at 551. "A suspect's satisfactory explanation of suspicious behavior is certainly a factor which law enforcement officers are entitled to take into consideration in making the determination . . . [but they are] under no obligation to give any credence to a suspect's story nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation . . . ." *Criss*, 867 F.2d at 263.

The State Defendants contend that even when viewed in the light most favorable to Plaintiff, the evidence does not demonstrate that a constitutional violation occurred during their investigation and arrest of Plaintiff. *Champion*, 380 F.3d at 901. The gravamen of Plaintiff's complaint against the State Defendants is that Plaintiff's then-wife and mother-in-law, Defendants Dawn and Marion Breasbois, fraudulently accused Plaintiff of a crime and that the State Police officers then knowingly agreed to assist them. The result, according to Plaintiff, was an arrest and prosecution based on false accusations. As the State Defendants emphasize, however, Plaintiff has advanced little factual support for his assertion that the State Defendants knew or should have known that the allegations against him were false or that the State Defendants otherwise "conspired" with Defendant Dawn and her family to have Plaintiff arrested.

By contrast, the evidence that Rauschenberger was entitled to rely on in finding probable cause was extensive. The Michigan State Police received a phone call from Plaintiff's mother-in-law, Defendant Marion Breasbois, reporting that Plaintiff had threatened to kill Marion, Hanan, and Dawn if Hanan did not agree to return to Jordan.[3] Marion Breasbois further reported that Plaintiff

---

[3] Michigan law defines extortion more broadly than the traditional common law definition—i.e. a threat designed to compel another person to deliver something of monetary value. Under Michigan law, "[a]ny person who shall . . . threaten any injury to the person or property or mother, father, husband, wife or child of another with intent thereby to . . . compel the person so threatened to do or refrain from doing any act against his will" has committed

was on his way to the Breasboises home, and that he would arrive there that evening—a statement confirmed by Plaintiff's actual presence at the home that evening. Hanan and Dawn each confirmed Marion Breasbois' statements, and John Stuenkel, Plaintiff's manager, confirmed that Plaintiff was on his way to Michigan to resolve a family issue. [Dkt. # 53-2]. Moreover, Rauschenberger has affirmed under oath that he believed Hanan and Marion to be genuinely concerned for their safety. *Id.* The information available to Rauschenberger at the time he made the arrest constituted probable cause to believe Plaintiff had committed extortion. *See* Mich. Comp. Laws § 750.213.

Plaintiff emphasizes his belief that Rauschenberger's initial police report erroneously reported certain information. Plaintiff contends that the erroneous information demonstrates that Rauschenberger either knew Marion, Hanan, and Dawn were lying or that he conspired with them to falsely arrest Plaintiff. Specifically, Plaintiff contends that he never spoke with the State Defendants about the Koran that was located in the car at the time of his arrest, as the report suggests; he never told the State Defendants that they "had no right" or "should not interfere with my family"; he never told detective Rauschenberger that Hanan's complaint must have been the result of a communication error, based on Hanan's limited understanding of Arabic; and he never told Rauschenberger that he called Marion or Hanan that afternoon and that Rauschenberger should confirm the call on Plaintiff's phone. [Dkt. # 61-H]. Plaintiff also contends that Rauschenberger did not read Plaintiff's *Miranda* rights; that Rauschenberger refused to permit Plaintiff to answer a phone call from Dawn; and that Rauschenberger told Plaintiff that "the girls over here do what they want when they are eighteen" and omitted it from his report. *Id.*

---

felony extortion. Mich. Comp. Laws § 750.213. Thus, if, as Marion, Dawn, and Hanan claimed, Plaintiff threatened to kill Hanan and her mother if Hanan did not return to Jordan, Plaintiff may well have committed felony extortion.

Perhaps the most compelling evidence against the State Defendants is the apparent inconsistency between the Breasboises' phone records and Rauschenberger's police report. [Dkt. #63-E]. The phone records demonstrate that Plaintiff called the Breasboises' home at 1:25 p.m. and engaged in a twenty-one minute conversation with some person or persons at the home. Defendant Rauschenberger's police report demonstrates that he arrived at the home at approximately 1:00 p.m. and remained there until approximately 3:00 p.m. Thus, if both records are accurate, Rauschenberger was at the Breasboises' home while someone there spoke to Plaintiff on the telephone for twenty-one minutes, yet the police report made no mention of the call. Rather, the police report indicates that the occupants of the home told Rauschenberger that they had recently received a call from Plaintiff, but Rauschenberger did not report that a telephone call was received while he was at the home. Plaintiff suggests that Rauschenberger must have known of the call, and failing to mention it in his report demonstrates that he knowingly participated in a conspiracy with Hanan, Dawn, and Marion Breasbois to have Plaintiff arrested.

Although there may be some irregularities in the police report, Plaintiff has not demonstrated a material issue of fact as to whether his constitutional rights were violated by the State Defendants, nor has he established that essential facts are unavailable. *See* Fed. R. Civ. P. 56(d). First, whether there was probable cause to arrest Plaintiff depends on the facts known to Rauschenberger at the time of the arrest, not the facts recorded by Rauschenberger in the incident report. Additionally, the alleged misstatements are not material to the important question: whether there was probable cause to believe Plaintiff threatened Hanan in an effort to compel her to return to Jordan. The alleged misstatements emphasized by Plaintiff may be interpreted as some evidence that Rauschenberger was biased, but his subjective intentions are irrelevant. The question before the Court does not

-17-

involve Rauschenberger's justification for making the arrest, but whether a reasonable and prudent officer in Rauschenberger's situation would have had probable cause to make the arrest. *See Scott*, 436 U.S. at 137–38. The facts outlined above, which are not disputed, clearly establish probable cause to arrest Plaintiff for extortion under Michigan law. Even if Rauschenberger was present during the 1:25 p.m. call, there is no indication that he spoke to Plaintiff or that he listened to the call. The credible reports of Hanan, Dawn, and Marion Breasbois suggesting that Plaintiff threatened to kill them if Hanan did not return to Jordan established probable cause to arrest Plaintiff for extortion.

Plaintiff also asserts that Defendant Rauschenberger should be liable for the malicious prosecution and parental rights components of his § 1983 claim. Plaintiff has not, however, advanced any evidentiary support for his assertion. There is no evidence that Rauschenberger participated in the prosecution beyond investigating the crime and serving as a witness. Plaintiff's reliance on *Sykes v. Anderson*, 625 F.3d 294, 301–02 (6th Cir. 2010) is misplaced because there is no evidence in this case that the State Defendants lied to establish probable cause for the arrest or withheld material exculpatory evidence when testifying at the later criminal trial. Here, the alleged material misrepresentations came from the complaining witnesses, not from the police officers, and there is no evidence that the police officers knew the information was false. By contrast, in *Sykes*, a surveillance video demonstrated that the defendant police officers lied to establish probable cause at the preliminary hearing and again at trial.

Importantly, "[t]he Constitution does not guarantee that only the guilty will be arrested. If it did, § 1983 would provide a cause of action for every defendant acquitted—indeed, for every suspect arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). Rather, the Constitution provides

-18-

a set of procedural rules that law enforcement officers, prosecutors, and other officials must respect to provide a reasonable degree of certainty that innocent people are infrequently arrested, rarely prosecuted, and almost never convicted. *See Patterson v. New York*, 432 U.S. 197, 208 (1977). The record demonstrates that the police officers involved in this case complied with those rules. As such, even if Plaintiff never committed a crime, those officers did not violate his constitutional rights.

Even if the Plaintiff could produce sufficient evidence to raise a plausible inference that the State Defendants violated one or more of his constitutional rights, the Plaintiff has offered no legal authority to suggest that the right was clearly established. To be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted); *see also Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993) ("In determining whether a constitutional right is clearly established, the court must first look to decisions of the U.S. Supreme Court, then to decisions of the Sixth Circuit, and, finally to decisions of other circuits."). "This standard requires the courts to examine the asserted right at a relatively high level of specificity," and "on a fact-specific, case-by-case basis to determine whether a reasonable official in the defendant['s] position could have believed that his conduct was lawful." *Cope v. Heltsley*, 128 F.3d 452, 458-59 (6th Cir. 1997) (quotations marks and citation omitted, alteration in original).

Generally, there are two ways in which a plaintiff may show that government officials "were

on notice that they were violating a 'clearly established' constitutional right." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005). First, "where the violation was sufficiently 'obvious' under the general standards of constitutional care . . . the plaintiff need not show 'a body' of 'materially similar' case law." *Id.* (quoting *Brousseau v. Haugen*, 543 U.S. 194, 199 (2004)). Second, the violation may be shown "by the failure to adhere to a 'particularized' body of precedent that 'squarely govern[s] the case." *Id.* (quoting *Brousseau*, 543 U.S. at 201)."For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstance." *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997). Here, there is not even a suggestion, much less a "dictate," that the State Defendants were required to investigate the case further before arresting Plaintiff or that they should not have relied on the statements of three witnesses.[4]

Finally, with respect to Newsham and Burch, there is no evidence that Rauschenberger's colleagues took any action beyond responding to a fellow officer's call for assistance. Even if Plaintiff could establish that Rauschenberger violated a clearly established right, he would still be required to demonstrate that the other State Defendants, Newsham and Burch, were not entitled to rely on Rauschenberger's determination of probable cause. *See McPherson v. Kelsey*, 125 F.3d 989,

---

[4] Although it is not particularly clear from Plaintiff's complaint whether his Fourth Amendment claim includes a challenge to the search of his car, the car search would likely be permissible under *Arizona v. Gant*, 129 S. Ct. 1710, 1719 (2009), because it was reasonable for the officers to believe they would find evidence in the car related to the crime for which Plaintiff was being arrested. Indeed, they did find such evidence—three cell phones. Moreover, *Gant* was decided after the incident giving rise to this case occurred. Accordingly, the more restrictive procedures *Gant* describes for vehicle searches incident to a lawful arrest were certainly not "clearly established" at the time.

993–94 (6th Cir. 1997). Rauschenberger conducted the investigation, reasonably determined there was probable cause to believe Plaintiff committed the felony offense of extortion, and requested that Newsham and Burch assist in making the arrest. Newsham and Burch were entitled to rely on Rauschenberger's determination and assist him with the arrest. They were not required to conduct an independent investigation to personally satisfy themselves that probable cause existed to make the arrest. *See Karr v. Smith*, 774 F.2d 1029, 1031 (6th Cir. 1985) ("Under the fellow officer rule, probable cause is to be determined by the courts on the basis of the collective information of the police involved in the arrest, rather than exclusively on the extent of the knowledge of a particular officer who may actually make the arrest." (citation and quotations omitted)).

The State Defendants are entitled to qualified immunity as to Plaintiff's constitutional claims.[5] The State Defendants' summary judgment motion as to those claims will be granted.

**2.**

Defendants Miller, Dresser, and Gordon also contend they are entitled to qualified immunity as to Plaintiff's constitutional claims. As an initial matter, Miller's involvement in the case was limited to his role as the administrator of the Bay County Jail, where Plaintiff was held in custody for six months. Pl.'s Compl. ¶¶ 70–73. As the Bay County Defendants emphasize, maintaining a person in custody pursuant to a valid Court order does not violate any clearly established constitutional right. In response, Plaintiff repeats the conclusory allegations from his complaint that Miller conspired with the other Defendants to violate a host of clearly established constitutional

---

[5] Plaintiff does not cite a single case in support of his excessive bail claim. He simply repeats the allegation that, in his view, $500,000 was too much. Moreover, even if the amount was excessive, he does not explain why the State or County Defendants are liable under § 1983. The judge, not the defendants identified in Plaintiff's complaint, determined the appropriate bail amount. Without more, the claim must be dismissed.

rights, including the right to parent, to due process, and to be free from unreasonable searches and seizures. Without some factual support for Plaintiff's assertion that Miller participated in the alleged conspiracy, the claims against Miller must be dismissed under any standard. *See Shorts v. Bartholomew*, 255 F. App'x 46, 53 (6th Cir. 2007) (concluding county sheriff cannot be personally liable for confining a person in the county jail where there is no evidence the sheriff participated in the confinement or even knew the inmate was in the jail). And in any event, Miller is entitled to qualified immunity because the record demonstrates that Miller reasonably believed that his actions as the administrator of the jail complied with the law. *Pearson*, 129 S. Ct. at 223.

Defendants Gordon and Dresser also contend that they are immune from Plaintiff's constitutional claims, but under the doctrine of absolute prosecutorial immunity rather than qualified immunity. In *Imber v. Pachtman*, 424 U.S. 409, 427–29 (1976), the Supreme Court held that public prosecutors are entitled to the same immunity from civil suits filed under § 1983 as they are under common law. Thus, in order to protect the "vigorous and fearless performance" of their duty as prosecutors, Gordon and Dresser are absolutely immune under § 1983 for actions taken in their capacity as prosecutors. *Id.* Indeed, prosecutors are entitled to absolute immunity even if their actions were wrongful, malicious, or taken in bad faith. *Grant v. Hollenbach*, 870 F.2d 1135, 1138 (6th Cir. 1989). Plaintiffs who have been wronged by a prosecutor must look to criminal law or an attorney discipline committee for a remedy. *Imber*, 424 U.S. at 427–28.

Plaintiff agrees that Dresser and Gordon are entitled to absolute immunity to the extent they were acting as advocates, but contends they exceeded that role and are not protected to the extent they provided legal advice to the police or otherwise acted in an administrative capacity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 271 (1993) ("[P]rosecutors are not entitled to absolute

immunity for their actions in giving legal advice to the police.") (citing *Burns v. Reed*, 500 U.S. 478, 492–93 (1991)).  Plaintiff emphasizes that in Rauschenberger's police report [Dkt. # 61-D], Rauschenberger explained that he spoke with Gordon before Plaintiff was arrested and Gordon indicated to Rauschenberger that there was probable cause to arrest Plaintiff.[6]  Rauschenberger also spoke to Dresser before providing the police report to the U.S. Embassy in Jordan, and Dresser approved the disclosure of the report.

Plaintiff correctly emphasizes that to the extent Gordon or Dresser provided advice to the police officers, they are not entitled to absolute immunity, but they are nevertheless entitled to summary judgment.  The advice that Gordon allegedly provided, concerning the existence of probable cause to arrest Plaintiff, was correct.  As discussed in detail above, Rauschenberger had probable cause to arrest Plaintiff.  Moreover, the prosecutors are entitled to qualified immunity to the extent they were aiding the police at the investigation stage or discussing the propriety of disclosing the police report.  *See Buckley*, 509 U.S. at 273–74.  There is no factual support or legal authority for Plaintiff's assertion that the prosecutors violated his constitutional rights, much less a clearly established right.  Although they provided advice to Rauschenberger, there is no indication that the advice was wrong, much less constitutionally prohibited.

Accordingly, the individual Bay County Defendants are entitled to summary judgment on all of Plaintiff's federal claims.  The prosecutors are absolutely immune under federal law from § 1983 liability as long as they were acting within the scope of their duties as prosecutors.  They are also entitled to qualified immunity to the extent they were acting outside the scope of their duties

---

[6] Gordon does not remember the conversation, and submitted an affidavit indicating that it would not be his usual practice to provide pre-arrest advice as to the existence of probable cause to a police officer [Dkt. # 48-F].

as prosecutors. Plaintiff has not advanced any evidence that Defendant Miller participated in the alleged conspiracy, such that he would be liable to Plaintiff under federal law.

**B.**

Both the State and County Defendants assert, in passing, that Plaintiff is estopped from challenging the state court's probable cause determination at the preliminary hearing because the issue was necessarily litigated and decided at that hearing, and Plaintiff had a full and fair opportunity to challenge it at that time. Indeed, Sixth Circuit law "provides that where 'the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action." *Smith v. Thornburg*, 136 F.3d 1070, 1077 (6th Cir. 1998) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987)); *see also White v. Tamlyn*, 961 F. Supp. 1047, 1054–55 (E.D. Mich. 1997) (concluding that Plaintiff was collaterally estopped from challenging probable cause where a Michigan state judge concluded there was probable cause at the preliminary hearing and the plaintiff's subsequent conviction was affirmed on appeal). Although it may be unnecessary to address the argument in a case where Defendants are entitled to qualified immunity or absolute immunity, it is worth noting that the exceptions that Plaintiff relies on to overcome the defense are narrow.

Plaintiff correctly emphasizes that a § 1983 action is not necessarily estopped by a state court's determination of probable cause if there is evidence that the arresting officer deliberately supplied false information at the preliminary hearing. *Hinchman v. Moore*, 312 F.3d 198, 202–03 (6th Cir. 2002); *see also Sykes*, 625 F.3d at 312–13 (concluding an investigating officer may be liable under § 1983 for malicious prosecution, despite a state judge finding of probable cause at

-24-

preliminary hearing, where there is compelling evidence that the officer lied about material facts at that hearing). In *Sykes*, for example, the officers could be liable despite the finding of probable cause because a surveillance video conclusively demonstrated that they lied at the preliminary hearing. 625 F.3d at 313–14. Here, by contrast, Plaintiff presented little evidence that Rauschenberger, or any other officer for that matter, lied at the preliminary hearing or any other stage of the case. And perhaps more importantly, in finding probable cause, the state court judge relied exclusively on the testimony of Hanan and Marion Breasbois—Rauschenberger was called by Plaintiff and never questioned by the prosecutor at the preliminary hearing. Accordingly, the State and County Defendants are alternatively entitled to summary judgment, at least with respect to the Fourth Amendment claims, based on the doctrine of collateral estoppel.

## C.

Defendants next contend that Plaintiff's constitutional claims against Bay County should be dismissed because a county policy or custom was not the "moving force" behind the alleged constitutional violation. *See Monell*, 436 U.S. at 694. "[T]o satisfy the *Monell* requirements a plaintiff must identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quotations and citations omitted). Generally, the municipality will not be liable where the challenged action is taken only once. *See Bd. of Cnty. Comm'rs. v. Brown*, 520 U.S. 397 (1997); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (per curiam). But "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986). Moreover, if, as a result of the municipality's

deliberate indifference, its employees were not adequately trained or supervised and the inadequacy of the training or supervision actually caused the injury, the municipality may be liable for the employee's conduct. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

Plaintiff again offers the conclusory allegation that his arrest and prosecution resulted from Bay County's deliberate failure to train and supervise its employees. Pl.'s Compl. ¶ 159. He does not, however, provide any factual support for his assertion. Plaintiff has not offered any evidence to suggest that Bay County's employees conspired with private individual's to violate Plaintiff's constitutional rights. There is similarly no evidence that the alleged conspiracy resulted from Bay County's deliberate indifference to Plaintiff's constitutional rights. Plaintiff has not even suggested that Bay County has engaged in a pattern or practice of falsely arresting and prosecuting Americans from other countries in an effort to avoid other countries' immigration laws. Accordingly, Defendant Bay County is entitled to summary judgment as to all of Plaintiff's claims.[7]

## D.

Pursuant to the conclusions reached above, the only remaining unchallenged federal claims are those against Defendants Marion and Jerry Breasbois. The parties informed the Court that Marion Breasbois died after the complaint was filed and Jerry Breasbois has not participated in the case beyond filing a pro se answer to the complaint. Moreover, Jerry Breasbois is a private actor who, as the Court explained in detail in an earlier opinion in this case, is not likely to be held liable under § 1983. *See Ghaith v. Rauschenberger*, No. 09-14336-BC, 2010 WL 4982795 (E.D. Mich. Dec. 2, 2010). Accordingly, it is unlikely that Plaintiff retains any viable federal claims and the

---

[7] Plaintiff admits that his state-law claims against Bay County should be dismissed.

Court may dismiss the § 1983 claims against the Breasboises sua sponte.

The Court is not obligated to address Plaintiff's state-law claims if there are no remaining federal claims. 28 U.S.C. § 1367(c)(3); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). Nor is there a particularly compelling reason for the Court to retain jurisdiction over the state law claims in this case. The parties have engaged in very little discovery and the decision to dismiss the § 1983 claims was based, primarily, on the doctrine of qualified immunity.

As a result, the Defendants' motions with respect to the state law claims will be held in abeyance pending additional briefing on whether the Court should retain jurisdiction. The briefing should focus on whether there is any reason to retain jurisdiction in federal court.

## V

Accordingly, it is **ORDERED** that the State and County Defendants' motions for summary judgment [Dkt. # 48, 53] are **GRANTED IN PART**. All of Plaintiff's § 1983 claims against the State and County Defendants are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that all of Plaintiff's claims against Bay County and the Bay County Sheriff's Department are **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that Defendants' motions for summary judgment with respect to the state law claims [Dkt. # 48, 53, 69] are **HELD IN ABEYANCE** pending resolution of the jurisdictional question. The briefing schedule and hearing date on Defendant Dawn Rose Porter Ghaith's motion for summary judgment [Dkt. # 69] are **SUSPENDED**.

It is further **ORDERED** that Plaintiff shall submit a supplemental brief regarding the

predicate for retaining jurisdiction on or before **March 18, 2011**.  The Defendants may submit

responses on or before **April 1, 2011**.  Plaintiff may file a single reply brief on or before **April 8,**

**2011**.  Each supplemental brief shall not exceed five pages in length.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: March 10, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on March 10, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS