UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

FAWAZ GHAITH,

        Plaintiff,

v.

        Case Number 09-14336-BC
        Honorable Thomas L. Ludington

DON RAUSCHENBERGER, JR., MARION
BREASBOIS, JERRY BREASBOIS, RICHARD
I. DRESSER, SCOTT GORDON, DAWN ROSE
PORTER GHAITH, BAY COUNTY, BAY
COUNTY SHERIFF'S DEPARTMENT,
MICHAEL NEWSHAM, MICHAEL E. BURCH
and JOHN E. MILLER,

        Defendants.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND COSTS

In 2009, Plaintiff Fawaz Ghaith filed a thirteen-count complaint against nine individual Defendants and two municipal Defendants. Named Defendants included his wife, Dawn Rose Porter Ghaith; her mother and stepfather, Marion and Jerry Breasbois; Bay County Assistant Prosecutors, Richard I. Dresser and Scott Gordon; Michigan State Police Officers, Don Rauschenberger, Jr., Michael Newsham, and Mark E. Burch; Bay County Sheriff John E. Miller; the Bay County Sheriff's Department; and Bay County. In the course of three separate opinions and orders (ECF Nos. 56, 77, 82), the Court dismissed all of Plaintiff's claims.

The county Defendants — Dresser, Gordon, Miller, the Bay County Sheriff's Department, and Bay County — then filed the motion for attorneys fees and costs now before the Court. ECF No. 85. Seeking $62,116.95 in attorney fees and costs, the request includes

$60,169.50 in attorney fees (445.7 hours of attorney time at $135 per hour), plus $1,947.45 in costs. For the reasons that follow, the motion will be granted in part and denied in part, and Defendants shall be awarded two hours of attorney fees ($270), plus costs ($1,947.45), for a total award of $2,217.45.

## I.

In the three opinions issued in this case, the Court was required to apply two different standards of review, the Rule 12(c) judgment on the pleadings standard and the Rule 56(a) summary judgment standard. In considering a Rule 12(c) motion, the Court assumes all "well pleaded factual allegations" are true and will not look beyond the pleadings in reaching a conclusion. *Lowden v. Cnty. of Clare*, 709 F. Supp. 2d 540, 545 (E.D. Mich. 2010) (citing 5C Wright & Miller, *Federal Practice & Procedure* § 1368). In considering a Rule 56(a) motion, however, the Court may review the entire record in the case and will consider admissible evidence, including affidavits, deposition transcripts, and other documents in reaching a conclusion. Fed. R. Civ. P. 56(c). With these standards in mind, the facts as alleged in Plaintiff's complaint are summarized below, with other relevant evidence referenced in the appropriate circumstances.

Plaintiff and Defendant Dawn Rose Porter Ghaith ("Defendant Dawn") were married and remained married throughout the events relevant to this case. The couple has four children, Lana, Mohammed, Samer, and Hanan. Compl. ¶¶ 17–18, ECF No. 1. In 2008, Defendant Dawn and the four children resided in Jordan, while Plaintiff divided his time between Jordan, where he lived with his family, and the United States, where he worked as a truck driver. *Id.* ¶¶ 22–24. Defendant Dawn wished to divorce Plaintiff and return to the United States with the children to

be nearer Defendant Dawn's mother and step-father, Defendants Marion and Jerry Breasbois. *Id.* ¶¶ 25–27. But the youngest son, Samer, did not have a passport. *Id.* And Samer's Jordanian passport, in accordance with that country's laws, could only be renewed by Plaintiff, his father, unless Plaintiff was dead or in prison. *Id.* ¶ 28.

In August 2008, the eldest daughter, Hanan, traveled to the United States to live with Defendants Marion and Jerry Breasbois. *Id.* ¶¶ 29–30. Plaintiff was also in the United States at the time. When he learned Hanan had arrived, Plaintiff called the Breasbois' residence. Between August 26 and September 2, Plaintiff and Hanan had several "pleasant conversations." *Id.* at ¶ 39. Plaintiff also accepted the Breasbois' invitation to a dinner to be held September 2, the first night of Ramadan, at the Breasbois' residence. *Id.* ¶¶ 37–38.

Unbeknownst to Plaintiff, the Breasbois then contacted the Bay County Sheriff and the Michigan State Police and falsely reported that Plaintiff was harassing and threatening them. *Id.* ¶¶ 41–42. On September 1, 2008, Plaintiff confirmed the dinner invitation for the next evening, and was told to arrive at 5:00 p.m. *Id.* ¶ 44. The following day, the Breasbois contacted Defendant Rauschenberger of the Michigan State Police and falsely reported that Plaintiff had threatened to kill them and was coming to their home that evening to take Hanan back to Jordan. *Id.* ¶¶ 46–48. At 1:00 p.m., Rauschenberger came to the Breasbois' home to interview the Breasbois and Hanan about the alleged threats. *Id.* ¶ 48. At 1:20 p.m., Rauschenberger arranged for Hanan to call Plaintiff on the telephone in an attempt to get Plaintiff to repeat the threats. *Id.* ¶¶ 45, 50. Plaintiff spoke to Hanan and the Breasbois for twenty minutes; he did not make any incriminating statements. *Id.* Rauschenberger then informed other state police officers and local law enforcement agencies that Plaintiff had threatened the Breasbois and suggested that Plaintiff

was planning to engage in an "honor killing" of Hanan. *Id.* ¶¶ 53–54. Rauschenberger also contacted Defendant Gordon of the Bay County Prosecutor's office, who instructed Rauschenberger to arrest Plaintiff. *Id.* ¶¶ 55–57.

At 5:00 p.m., Plaintiff arrived at the Breasbois' home with groceries to prepare dinner. *Id.* ¶ 58. No one was home, so Plaintiff called Defendant Dawn in Jordan while he waited in the car. *Id.* ¶ 59. Defendant Dawn then contacted the Michigan State Police. *Id.* ¶¶ 60–63. Defendants Rauschenberger, Newsham, and Burch went to the Breasbois' home, arrested Plaintiff, and searched his vehicle. *Id.* The search revealed groceries, but no weapons or other contraband. *Id.* ¶¶ 65–67. Plaintiff was transported to the Bay County Jail, where he was held on a $500,000 bond and charged with four counts of extortion for making threats over the phone. *Id.* ¶¶ 75–76.

A short time later, Defendant Dawn contacted the U.S. Embassy in Jordan. County Defs.' Mot. Summ. J. Ex. 8, at 9–10, ECF 53-9. And, with the cooperation of the Michigan State Police, the Bay County Prosecutor's office, Defendant Dresser, and Defendant Marian Breasbois, the Jordanian authorities were informed of Plaintiff's arrest. *Id.*; Compl. ¶¶ 77–80. A new passport was issued to Samer with his mother's permission. *Id.* On September 11, 2008, Defendant Dawn traveled to the United States with Samer, Lana, and Mohammed. Compl. ¶ 81.

Plaintiff was eventually tried on the extortion charges, but the jury was unable to reach a verdict, resulting in a mistrial. *Id.* ¶ 90. On the eve of a second trial, the Bay County Prosecutor's Office dismissed all the charges against Plaintiff. Investigators were unable to confirm that the threatening phone calls allegedly made by Plaintiff actually occurred. The

phone company had no record of the alleged calls. After spending 196 days in custody, Plaintiff was released from the Bay County Jail. *Id.* ¶¶ 92–93.

Plaintiff filed suit on November 4, 2009, contending that the Defendants conspired to violate his constitutional rights to parent, to be free from unreasonable searches and seizures, and to a fair trial. He also included several state-law claims, for malicious prosecution, false arrest, abuse of process, and other torts.

On July 30, 2010, Defendant Dawn filed a motion for judgment on the pleadings. ECF No. 40. Following a hearing, the Court issued an opinion on December 2, 2010, granting in part and denying in part Defendant Dawn's motion. ECF No. 56. The Court concluded that Plaintiff's constitutional claims against Defendant Dawn should be dismissed because she is not a state actor, but Plaintiff's state-law tort claims against Defendant Dawn stated a plausible claim for relief because he "adequately alleged that Defendant Dawn participated in a conspiracy to provide knowingly false reports of a crime to police officers in order to secure Plaintiff's arrest and detention for a malicious purpose." *Ghaith v. Rauschenberger*, No. 09-14336-BC, 2010 WL 4982795, at *8 (E.D. Mich. Dec. 2, 2010). Additionally, the Court explained, "providing information to state authorities that leads to a criminal prosecution is not an abuse of process. Using the indictment or other legal process issued in that criminal case, however, to facilitate the transportation of Plaintiff's son from Jordan to the United States . . . may well be an abuse of process." *Id*. at *11. Judgment on the pleadings was denied with respect to the state-law tort claims.

While Defendant Dawn's motion for judgment on the pleadings was pending, the remaining Defendants also filed motions for summary judgment or judgment on the pleadings.

The Bay County Defendants, including Dresser, Gordon, the sheriff, the sheriff's department, and the county, filed a motion for summary judgment or judgment on the pleadings on November 22, 2010.  ECF No. 48.  The state Defendants, including Burch, Newsham, and Rauschenberger, filed a motion for summary judgment on November 24, 2010.  ECF No. 53.  Both the county and state Defendants argued that the individuals identified in the complaint were entitled to qualified immunity or state governmental immunity, and that the claims against the county and the sheriff's department should be dismissed for failure to state a claim.  On March 10, 2011, the Court issued an opinion dismissing the constitutional claims against the county and state Defendants.  ECF No. 77.  The Court concluded that the individual defendants were entitled to qualified immunity, and that Plaintiff had not pleaded a plausible claim for relief against the county or the sheriff's department, explaining:

> The gravamen of Plaintiff's complaint against the State Defendants is that Plaintiff's then-wife and mother-in-law, Defendants Dawn and Marion Breasbois, fraudulently accused Plaintiff of a crime and that the State Police officers then knowingly agreed to assist them.  The result, according to Plaintiff, was an arrest and prosecution based on false accusations.  As the State Defendants emphasize, however, Plaintiff has advanced little factual support for his assertion that the State Defendants knew or should have known that the allegations against him were false or that the State Defendants otherwise "conspired" with Defendant Dawn and her family to have Plaintiff arrested.

*Ghaith v. Rauschenberger*, No. 09-14336-BC, 2011 WL 869242, at *8 (E.D. Mich. March 10, 2011).  The Court also dismissed all of Plaintiff's state claims against the county, the sheriff's department, and the sheriff.

At that point, the only claims that were still pending were state-law claims.  Accordingly, in a May 23, 2011 opinion, the Court declined to exercise supplemental jurisdiction and dismissed the remaining state law claims without prejudice and entered judgment in favor of the

-6-

Defendants. ECF Nos. 83, 84. Plaintiff appealed the judgment on June 20, 2011, as to Rauschenberger, Dresser, and Gordon only.

On June 6, 2011, the county Defendants — Dresser, Gordon, Sherriff Miller, Bay County Sheriff's Department, and Bay County — filed the motion for attorneys fees and costs now before the Court. ECF No. 85. In addition to the $62,116.95 in attorney fees, Defendants also seek $1,947.45 in costs. Defendants contend that attorney fees should be awarded under 42 U.S.C. § 1988 and 28 U.S.C. § 1927 because Plaintiff's claims against Defendants were frivolous and vexatious, and that costs should be awarded under Federal Rule of Civil Procedure 54(d) because Defendants were the prevailing party. Plaintiff opposes the motion for fees and costs, arguing that his claims were not frivolous or vexatious and that the requested fees and costs are excessive. As noted above, the motion will be granted in part and denied in part, and Defendants shall be awarded $2,217.45.

## II.

Under Federal Rule of Civil Procedure 54(d), "costs — other than attorney's fees — should be allowed to the prevailing party." The Court's Local Rules further provide that if the prevailing party files a bill of costs within twenty-eight days after the entry of judgment, the clerk will tax costs pursuant to the Court's Bill of Costs Handbook. E.D. Mich. L.R. 54.1. Here, the bill of costs was filed within the required time frame as an exhibit to Defendants' motion for costs and fees. The clerk did not tax the costs, however, because it was not filed as a separate document. Nevertheless, Defendants' bill of costs appears to meet all the requirements of the rules. Presumptively, therefore, $1,947.45 should be taxed to Plaintiff.

Plaintiff contends that the Court should exercise its discretion to deny costs because they are excessive. *See Manildra Milling Corp. v. Ogilvie Mills, Inc.*, 76 F.3d 1178, 1183 (6th Cir. 1996). Given the number of claims filed by Plaintiff and the substantial record generated by the earlier proceedings in state court, however, the Court finds that Defendants' requested costs are not excessive — indeed, under the circumstances, they are relatively modest. Accordingly, the Court grants the request for costs and awards Defendants $1,947.45.

## III.

Defendants next contend that they are entitled to attorney fees under 42 U.S.C. § 1988, which provides that in a § 1983 civil rights case "the court, in its discretion, may allow the prevailing party" reasonable attorney fees. 42 U.S.C. § 1988(b). "[W]hile prevailing plaintiffs are entitled to attorneys fees under the statute in all but special circumstances, prevailing defendants are entitled to attorneys fees much less frequently." *Wolfe v. Perry*, 412 F.3d 707, 720 (6th Cir. 2005) (citing *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417–18 (1978)) (additional citations and quotation marks omitted).

Courts may award prevailing defendant attorney fees under § 1988 if "the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (quoting *Wayne v. Village of Sebring*, 36 F.3d 517, 530 (6th Cir. 1994)). A suit is not "frivolous" or "without foundation," however, merely "because the plaintiff ultimately does not prevail." *Id.* "A plaintiff should not be assessed his opponent's attorney fees unless the court finds the claim was groundless at the outset or that the plaintiff continued to litigate after it clearly became so." *Id.* (citing *Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985)).

Indeed, the Sixth Circuit emphasizes, "[a]n award of attorney fees against a losing plaintiff in a civil rights action 'is an extreme sanction, and must be limited to truly egregious cases of misconduct.' " *Riddle v. Egensperger*, 266 F.3d 542, 547 (6th Cir. 2001) (quoting *Jones v. Cont'l Corp.*, 789 F.2d 1225, 1232 (6th Cir. 1986)). The inquiry is fact specific, and the courts are to make the decision on a case-by-case basis. *Wilson-Simmons*, 207 F.3d at 823.

## A.

Plaintiff's claims against Gordon, Dresser, and Bay County were ultimately dismissed for failure to state a claim. They were not, however, frivolous or unreasonable. The case against Plaintiff was based upon on the prosecutors' acceptance of two witnesses' testimony and the prosecutors' corresponding rejection of Plaintiffs' explanation of the events — up to and including his stated reason for going to the Breasbois' residence on September 2, 2008. The testimony of the two witnesses that the prosecutors elected to believe, however, was not corroborated by the telephone records in the prosecutors' possession. It was not corroborated by the telephone conversation between Hanan and Plaintiff which Rauschenberger arranged — and listened to — on the afternoon of September 2. And it was not corroborated by the items found in Plaintiff's possession on the evening of September 2 — groceries, not weapons. Nevertheless, Plaintiff was incarcerated for more than six months in the Bay County jail on a $500,000 bond. Indeed, the prosecutors continued to pursue the charges against Plaintiff after the first trial resulted in a mistrial and opposed his efforts to obtain a lower bond.

Additionally, while the prosecution was ongoing, Plaintiff alleges that the prosecutors assisted his former wife in gaining permission from the Jordanian government to permit Plaintiff's youngest son to travel to the United States from Jordan. *See* County Defs.' Mot.

Summ. J. Ex. 8, at 9–10 (police report recording that with the cooperation of the Michigan State Police, the Bay County Prosecutor's office, Defendant Dresser, Defendant Rauschenberger, and Defendant Marian Breasbois, the Jordanian authorities were informed of Plaintiff's arrest and issued a new passport to Samer with his mother's permission). If not for his incarceration, Plaintiff argues, the son would not have been able to travel to the United States without Plaintiff's permission. Compl. ¶ 28; *see also* Resp. Mot. Summ. J. Ex. M, ECF No. 74-14. While Defendants' actions may have been motivated by an understandable impulse to help a perceived victim of domestic violence, Defendant Dawn's actions might also have alerted Defendants that she may have harbored an ulterior motive for her version of the events which culminated in Plaintiff's arrest and incarceration.

Similarly, although no direct evidence connected the prosecutors or Bay County to a scheme to deprive Plaintiff of his civil rights, there was some evidence, namely the phone records, that supported Plaintiff's accusation that Rauschenberger intentionally included inaccurate information in the warrant affidavit, and that the prosecutors knew or should have known that information was false. That is some evidence supporting Plaintiff's false arrest, false imprisonment, malicious prosecution, due process, and excessive bail claims. Similarly, as this Court noted in its March 10 opinion and order, "[t]he charges were dropped when investigators were unable to confirm that the threatening phone calls allegedly made by Plaintiff actually occurred. Although the phone records confirm that Plaintiff made several calls to the Breasboises' home, the times of those calls apparently did not match the times reported by Marion Breasbois and Hanan." *Ghaith v. Rauschenberger*, No. 09-14336-BC, 2011 WL 869242, at *4 (E.D. Mich. March 10, 2011). That is also some evidence supporting Plaintiff's

*Monell* claim against the county that the prosecutors were not properly trained or supervised. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

Ultimately, Plaintiff's constitutional claims against the prosecutors and the county were dismissed because he did not include sufficient factual information in his complaint to raise his right to relief above a speculative level. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Although the Court concluded that Plaintiff's complaint did not set forth a plausible claim for relief, it does not necessarily follow, as Defendants argue, that his claims were frivolous or unreasonable. While a frivolous claim will necessarily be implausible, the converse need not be true. Here, Plaintiff's factual claims against the prosecutors and Bay County were supported by some evidence. *See* Fed. R. Civ. P. 11(b). And his legal contentions were warranted by existing law or by nonfrivolous arguments for extending existing law. *See id*. Although ultimately he did not set forth sufficient "factual content that allow[ed] the court to draw the reasonable inference that the defendant[s were] liable for the misconduct alleged," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), his claims were not "groundless." *Wilson-Simmons*, 207 F.3d at 823. Accordingly, the Court shall deny Defendants' motion for attorney fees as to the prosecutors and the county.

**B.**

Whether Plaintiff should be sanctioned under § 1988 for including Sheriff Miller and the Bay County Sheriff's Department as Defendants is a closer question. After Defendants explained to Plaintiff that the sheriff's department is not an entity that is capable of being sued under Michigan law, and that the sheriff had no involvement in the underlying case outside of his role as supervisor of the Bay County Jail where Plaintiff was incarcerated, Plaintiff should have

agreed to dismiss his claims against them. Indeed, Plaintiff ultimately did agree to dismiss his claims against the sheriff's department (ECF No. 63), but not until after Defendants were required to brief the point. And despite the fact that Plaintiff had no evidence to connect the sheriff to the alleged conspiracy, he was unwilling to dismiss the claims against the sheriff. Whether or not Plaintiff was aware his claims against the sheriff and the sheriff's department were groundless at the outset, Plaintiff's conduct demonstrates that he continued to litigate his claims against them after it was made plain that he could not state a claim against them.

Nevertheless, of the 446 attorney hours Defendants invested in this case, only a small portion of that time was expended in defense of the sheriff and the sheriff's department. For example, Defendants filed a thirty-one page brief in support of their motion for summary judgment. Less than two pages were devoted to the sheriff and the sheriff's department. Although Plaintiff's claims against the sheriff and the department may well have been frivolous, the overwhelming majority of the resources that Defendants devoted to defending the case were expended primarily on behalf of Dresser, Gordon, and the county. Thus, the Court shall award two hours of attorney fees based on the claims against the sheriff and the department, a reasonable amount of attorney time to research the status of the sheriff and the department under state law and to corroborate that the sheriff had no personal knowledge of the facts of the case. At a rate of $135 per hour, this entitles Defendants to $270 in attorney fees.

### III.

Defendants also contend that they should be awarded attorney fees under 28 U.S.C. § 1927, which provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case

unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

For the reasons described above, Plaintiff's claims against Dresser, Gordon, and the county were not vexatious or unreasonable. Although Plaintiff's claims against the sheriff and the sheriff's department may well have been vexing to defend against, the Court concludes that the claims were not brought in bad faith or simply to harass the sheriff and the department. Moreover, as the Court has awarded attorney fees for the claims against these two Defendants under 42 U.S.C. § 1988, an additional fee award is not warranted.

### IV.

Accordingly, it is **ORDERED** that Defendants' motion for attorney fees and costs (ECF No. 85) is **GRANTED IN PART AND DENIED IN PART**. Defendants are awarded $2,217.45 in attorney fees and costs.

s/Thomas L. Ludington<br>
THOMAS L. LUDINGTON<br>
United States District Judge

Dated: September 7, 2011

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on September 7, 2011.

s/Tracy A. Jacobs
TRACY A. JACOBS